RUTH HANDELSON, PETITIONER-APPELLANT, v. BOARD OF TRUSTEES, PUBLIC EMPLOYEES' RETIREMENT SYSTEM, RESPONDENT-RESPONDENT, AND RIVER DELL REGIONAL BOARD OF EDUCATION, RESPONDENT-INTERVENOR.

Superior Court of New Jersey
Appellate Division

Argued February 27, 1984—Decided March 9, 1984.

Before Judges ARD, MORTON I. GREENBERG and TRAUT-WEIN.

*Richard A. Friedman* argued the cause for appellant (*Ruhlman, Butrym & Friedman,* attorneys; *Richard A. Friedman* and *Barbara G. Rapkin,* on the brief).

*Michael J. Haas,* Deputy Attorney General, argued the cause for respondent Board of Trustees, Public Employees' Retirement System (*Irwin I. Kimmelman,* Attorney General, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel; *Michael J. Haas,* on the brief).

*Marc Joseph* filed a letter in lieu of brief for respondent River Dell Regional Board of Education (*Stein, Joseph & Rosen,* attorneys).

The opinion of the court was delivered by

MORTON I. GREENBERG, J.A.D.

*N.J.S.A.* 43:15A–11 provides that an employee in permanent public employment enrolled within the Public Employees' Retirement System (PERS) may receive credit for prior temporary service by making contributions to PERS, provided that the temporary employment results without interruption in perma-

nent employment. The statute, however, requires the employee to agree within one year of becoming a member of PERS to make contributions covering the period of temporary service in order to receive credit for this temporary service. The question before this court is whether this time limitation may be extended.

In October 1976 petitioner was temporarily employed as an attendance clerk at the River Dell Regional School. On September 1, 1977 she was appointed to permanent employment and on December 1, 1977 she enrolled in PERS. From materials she received when applying for membership in PERS, petitioner learned of her entitlement to purchase back service credits and in October 1978 asked the school board's payroll clerk for an explanation of the procedure to do so. The clerk advised petitioner to contact the Division of Pensions.

On November 6, 1978 petitioner wrote a letter to the Division stating in pertinent part:

> During the school year 1976 through 1977 I was employed as a temporary full time employee at the Riverdell Regional Schools.
>
> Am I eligible to purchase one years service for that period? What will the cost of such purchase be to me?
>
> Would you be kind enough to furnish the necessary papers that are required.

Approximately ten days later petitioner received a post card from the Division acknowledging receipt of her inquiry and advising her that specific information concerning her account would be sent to her as soon as the necessary processing had been completed. The Division asserts that on December 14, 1978 it' sent petitioner the appropriate information and form to enable her to submit her application. Petitioner, however, denies receiving this material.

It is undisputed that in some manner the River Dell Regional Board of Education received the materials which PERS had intended petitioner to receive. The board completed the form, dating it January 22, 1980, and mailed it to the Division which received it on January 31, 1980. The form as completed then constituted petitioner's application. PERS rejected the applica-

tion as untimely. It advised petitioner that her privilege to purchase the credit had expired January 14, 1979. Petitioner then requested a hearing and thus the case was referred to the Office of Administrative Law. The Board of Education of River Dell Regional School District intervened as a party.

Following the hearing the judge rendered her initial decision on March 28, 1983. The judge noted that the major factual question was whether petitioner had received the material sent to her by PERS on December 14, 1978. She found that petitioner had not received it and that the Division most likely had sent the materials to the board. Thus petitioner had been denied an opportunity to purchase back service because of the Division's error. The judge noted that the time period to purchase back service had been relaxed in at least one other case. She therefore recommended to PERS that it permit petitioner to purchase the credit for the period of her temporary employment.

On May 18, 1983 the trustees rejected the judge's recommendation. In their view *N.J.S.A.* 43:15A–11 unequivocally provided that a member of PERS desiring to make the purchase must agree to do so during her first year of membership. Inasmuch as petitioner had not so agreed but rather had only requested information within the one-year period, her application was untimely and thus the trustees refused to consider it. Petitioner has appealed from this decision.

We disagree with the determination of the trustees that they did not have power to relax *N.J.S.A.* 43:15A–11 and allow petitioner to purchase credit for the period of temporary service. Initially we point out that PERS itself does not strictly construe *N.J.S.A.* 43:15A–11.

*N.J.S.A.* 43:15A–11 provides:

Any person employed temporarily by an employer and whose temporary employment resulted, without interruption, in permanent employment shall be permitted to make contributions covering such service on the basis of rates as provided by section 25 (C. 43:15A–25) and receive the same credit as if he had been a member during such service. The member must agree to make such

contributions within 1 year after the effective date of this act or during his first year of membership in the retirement system.

In this case petitioner became a member of PERS on December 1, 1977.  A literal reading of *N.J.S.A.* 43:15A–11 indicates that to be timely, petitioner had to make an offer to purchase back service by December 1, 1978.  Nevertheless PERS established January 14, 1979 as the cut-off date for petitioner to make a timely offer to purchase.  At oral argument before us counsel agreed that January 14, 1979 was the cut-off date since it was the first anniversary of contributions being made to PERS on behalf of petitioner.  Yet there is no reference in *N.J.S.A.* 43:15A–11 to an extension of time because of a delay between a member joining PERS and contributions being made on her behalf.

This nonliteral interpretation of *N.J.S.A.* 43:15A–11 adopted by PERS has been codified in *N.J.A.C.* 17:2–5.1.  This rule provides that a member of PERS eligible to purchase temporary service must submit a written request to purchase service within one year from the date her initial pension contributions are certified and must authorize the purchase before the expiration date indicated on the quotation letter from PERS advising her of the cost.  The regulation therefore authorizes two periods which may result in an extension of the one-year period in *N.J.S.A.* 43:15A–11.

We further point out that an inflexible interpretation of *N.J.S.A.* 43:15A–11 is impractical.  Under the section, the member must agree to make the contributions within her first year of membership in PERS.  Yet the member may not be in a position within that year to know what contributions may be required as it is obvious that PERS and not the employee will establish the amount.  Surely the Legislature cannot have contemplated that the member agree to make contributions without knowing what the cost to her would be.  A literal reading of *N.J.S.A.* 43:15A–11, however, could implicate this result if a member desired to receive credit for the temporary service.  We

should avoid a construction leading to such an inequitable and absurd result. *Davis v. Heil,* 132 *N.J.Super.* 283, 293 (App.Div. 1975), aff'd 68 *N.J.* 423 (1975).

We find support for our conclusion in *Zigmont v. Teachers' Pension, Etc., Fund Trustees,* 91 *N.J.* 580 (1983). There the Supreme Court construed *N.J.S.A.* 18A:66–8 as permitting, in an appropriate case, a teacher on maternity leave to purchase pension credit beyond one year after her return to employment for the period of the leave, even though the statute may have literally required the purchase to be within one year after her return to service following the leave. In our case PERS rejected *Zigmont* as factually distinguishable. While the facts in *Zigmont* were different from those involving petitioner, we find *Zigmont* to be a compelling guide as to the approach we should take.

Of course, we do not intend to imply that the time limitations of *N.J.S.A.* 43:15A–11 may be freely ignored. Rather our decision is limited to a situation in which within one year of becoming a member of PERS the member initiates the procedure to purchase credit for the period of temporary service. We do not decide what our result would be in a situation in which a member's initial inquiry to PERS is beyond one year after the membership in PERS begins and is not timely under *N.J.A.C.* 17:2–5.1.

As we have already noted, the trustees in rejecting petitioner's application failed to exercise their discretion. In this circumstance their decision is reversed and the matter is remanded to them for reconsideration. They should determine in their discretion whether to allow petitioner to purchase the credits for her period of temporary employment. *See Zigmont, supra,* 91 *N.J.* at 584. We are not to be understood as expressing an opinion as to how that discretion is to be exercised. We do not retain jurisdiction.